## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ENVIRO HYDRO HOLDINGS, INC.,
d/b/a ENVIROVAC,

Plaintiff,

v.

ENVIROSMART, LLC d/b/a ES
INTEGRATED, JIMMY JACKSON,
JR., HUBERT MOSER, BRIAN
LLOYD, BILLY MICHAEL
JORDAN and JOE ADKINS,

Defendants.

Civil Action File No: CV 426-40

## VERIFIED COMPLAINT FOR INJUNCTIVE
## RELIEF AND DAMAGES

Plaintiff Enviro Hydro Holdings, Inc. d/b/a EnviroVac ("EnviroVac") files

this Verified Complaint for Injunctive Relief and Damages against Defendants

EnviroSmart, LLC d/b/a ES Integrated ("EnviroSmart"), Jimmy Jackson, Jr.

("Jackson"), Hubert Moser ("Moser"), Brian Lloyd ("Lloyd"), Billy Michael Jordan

("Jordan"), and Joe Adkins ("Adkins"), and respectfully shows this Court as follows:

### INTRODUCTION

This case arises from blatant violations of restrictive covenants by Jackson,

Moser, Lloyd, Jordan, and Adkins (sometimes collectively the "Former

1

Employees") in a calculated effort by EnviroSmart to raid EnviroVac's personnel, apparently trying to recreate EnviroVac's successful business lines, including its highly specialized Ultra High Volume Division.

EnviroVac is the Southeast's premier provider of large-scale manufacturing and industrial cleaning solutions. Jackson, Moser, Lloyd, Jordan, and Adkins are all former EnviroVac employees.

Immediately after resigning from EnviroVac in December 2025 and early January 2026, the Former Employees began working for EnviroSmart, a direct competitor of EnviroVac. In so doing, the Former Employees are directly violating their restrictive covenants, including noncompete, non-solicitation, and non-recruitment provisions as set out in the various agreements they entered into with EnviroVac.

Just as concerning, in violation of their non-disclosure obligations, before submitting their resignations, at least some of the Former Employees emailed sensitive and confidential data belonging to EnviroVac to their personal email accounts and those of their relatives and/or copied EnviroVac's information to USB devices.

In sum, the Former Employees agreed to reasonable limitations on their abilities to compete with EnviroVac when they accepted employment at EnviroVac

for significant compensation. They also agreed to reasonable protections with respect to EnviroVac's confidential information.

For its part, EnviroSmart hired the Former Employees and placed them in roles that put them in direct violation of their restrictive covenants with EnviroVac. EnviroVac placed EnviroSmart on notice of this fact on December 5, 2025, and again on January 14, 2026. Despite this, EnviroSmart continues to recruit and hire EnviroVac employees subject to restrictive covenants, and to employ them in competitive roles. In so doing, EnviroSmart is tortiously interfering with EnviroVac's contractual relationships with the Former Employees. EnviroVac is further concerned that EnviroSmart is or may begin using EnviroVac's confidential and trade secret information that was misappropriated by the Former Employees.

EnviroVac brings this action, and companion cases in Alabama and South Carolina, to enjoin further violative conduct by Defendants and for the damages already caused by such conduct.

## PARTIES, JURISDICTION, AND VENUE

1.    EnviroVac is a corporation incorporated under the laws of Delaware with its principal place of business in Savannah, Georgia.

2.    EnviroSmart is a company organized in South Carolina and may be served with process via its registered agent, Michelle Lynch, at 1629 Meeting Street Road, Charleston, South Carolina 29405, or otherwise as provided by law.

3.     Jackson is a resident of South Carolina and may be served with process at 40 Rockdale Court, Sumter, South Carolina 29154, or otherwise as provided by law.

4.     Moser is a resident of South Carolina and may be served with process at 35 Elkhorn Trail, Sumter, South Carolina 29154, or otherwise as provided by law.

5.     Adkins is a resident of Alabama and may be served with process at 4280 Coleman Road, Carrollton, Alabama 35447, or otherwise as provided by law.

6.     Jordan is a resident of Alabama and may be served with process at 1731 Teal Cr., Tuscaloosa, Alabama 35405, or otherwise as provided by law.

7.     Lloyd is a resident of Georgia and may be served with process at 1270 Tram Road, Tram, South Carolina, 29569, or otherwise as provided by law.

8.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the Defend Trade Secrets Act, 18 U.S.C § 1836, *et seq.*

9.     The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claim in this action that they form part of the same case or controversy under Article III of the United States Constitution.

10.   This Court has personal jurisdiction over the Former Employees, and venue is appropriate in this Court in that their various agreements with EnviroVac contain a choice of venue and jurisdiction clause that identifies the United States District Court for the Southern District of Georgia, Savannah Division as the sole venue for adjudicating disputes between and among them. Specifically, each of the Former Employees "agree[d] to the exclusive jurisdiction of . . . the United States District Court for the Southern District of Georgia, Savannah Division, for any dispute arising out of or related to this Agreement, and the Parties irrevocably consent[ed] to jurisdiction and venue in such courts . . ." [Jackson Agreement ¶ 3; Moser, Lloyd, Jordan, and Adkins Agreements ¶ 4]; *see Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) ("[A] litigant may give express or implied consent to the personal jurisdiction of the court.") (quotations and citation omitted), *overruling in part recognized by Lugo v. SmartRent Techs., Inc.*, No. 6:25-cv-64-PGB-RMN, 2025 WL 2443192 (M.D. Fla. Apr. 29, 2025); *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1296 (11th Cir. 2022) (holding that the defendant had contractually waived both personal jurisdiction and venue objections).

11.   This Court has personal jurisdiction over EnviroSmart in that it is a joint tortfeasor with the Former Employees and EnviroSmart has interfered with

EnviroVac's contractual relations in Georgia and caused harm and injury to EnviroVac in Georgia.

12.    In addition, venue and jurisdiction are proper in this Court as to EnviroSmart in that EnviroSmart conducts business and maintains an office in Savannah, Georgia according to its website. *See Contact*, ES INTEGRATED, https://www.es-integrated.com/contact (last visited Feb. 13, 2026).

13.    Venue further is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**STATEMENT OF FACTS**
**BACKGROUND REGARDING ENVIROVAC**

14.    EnviroVac services the manufacturing, construction, and other industries by providing highly trained work crews and equipment to clean and sanitize manufacturing facilities and equipment, including highly specialized services such as ultra high volume hydroblasting, hydroblasting, automated, hydroblasting, vacuum services, fugitive dust removal, hydro excavation, chemical cleaning, outage and turnaround services, waste disposal, and digital inspection.

15.    EnviroVac's Ultra High Volume Division engages in highly specialized hydroblast cleaning and decontamination services, with specialization in tools

designed to remotely clean industrial vessels with flows in excess of 1400 gallons and pressures to 10,000 psi.

16.    EnviroVac crews work across the country, making manufacturing facilities and equipment safe and sanitary.

17.    EnviroVac provides cost-effective solutions for cleaning industrial and manufacturing equipment. In so doing, EnviroVac uses data-based solutions, engineering and analytics, which lowers the cost of ownership, extends the lifespans of manufacturing assets, and makes systems stronger and safer.

18.    The industrial cleaning services industry is highly competitive and relationship-driven between customers and providers like EnviroVac. Through hard work, dedication, innovation, investment, and proprietary intellectual property, EnviroVac has become a market leader in these industries.

19.    EnviroVac's Ultra High Volume Division gives EnviroVac a competitive advantage in the industry as very few industrial cleaning service companies have the specialized tools, personnel, or know how to provide ultra high volume hydroblasting services, which take years and substantial sums of money to implement.

20.    EnviroVac invests heavily in developing and maintaining its customer relationships. Its success in these highly competitive industries depends on its

employees' knowledge of its customers' unique needs and requirements, and on EnviroVac's ability to provide top-quality technology, services, and innovative solutions to its customers. EnviroVac has developed and is currently developing pilot programs to meet its customers' unique needs, often involving evolving its current practices and offerings.

21. Among EnviroVac's most important assets are its team of experienced and qualified employees, its business processes, its pricing calculators, and its customer contact information and customer relationships.

22. During their employment at EnviroVac, the Former Employees received substantial training, information, business contacts, and other advantages that provided EnviroVac with a competitive edge in the marketplace, including valuable proprietary information about EnviroVac's intellectual property, methodologies, technology, business practices, long-term and short-term strategies, and pricing terms.

23. During their employment at EnviroVac, the Former Employees worked with and had access to all manners of confidential information, including customer data; information regarding EnviroVac's processes and procedures for winning business, performing work, and estimating jobs; prices; and employee information, such as compensation and performance metrics.

## ADKINS IS HIRED BY ENVIROVAC

24.   In August 2017, EnviroVac hired Adkins as a Supervisor, who was promoted to Area Manager in June 2019.

25.    As an Area Manager, Adkins was responsible for managing operations, client-facing functions, and the financial success of a market area and customer base, including monitoring and developing financial plans. Adkins was also responsible for the efficient and safe work activities of all employees, responsible for providing appropriate support to managers, supervisors, and employees, and resolving problems as required.

26.   His duties included responsibility over EnviroVac's Ultra High Volume Division in Alabama and West Georgia.

27.   Adkins supervised a crew of 70 that provided services in Alabama and West Georgia.

28.   Adkins regularly worked directly with EnviroVac customers throughout Alabama and West Georgia to establish and maintain key relationships with contacts at various levels inside each customer and to improve existing and generate new business opportunities.

29.   On August 16, 2016, Adkins and EnviroVac executed the New-Hire Confidentiality and Restrictive Covenant Agreement (the "Adkins

Agreement"). A true and accurate copy of the Adkins Agreement is attached

as **Exhibit 1**.

30.    The Adkins Agreement contains various restrictive covenants.

31.    Section 2D contains a noncompete, requiring that Adkins, for two years

following his separation:

> [N]ot compete with ENVIROVAC in the Geographic Area
> by performing the same or substantially similar Duties that
> EMPLOYEE performed for ENVIROVAC for (i.)
> Thompson Industrial Services, (ii.) any business or
> undertaking whose primary business is competitive with
> the Business of ENVIROVAC, or (iii.) any business or
> undertaking with whom or which EMPLOYEE had
> Material Contact in the one (1) year immediately
> preceding the Separation Date.

Adkins Agreement § 2D.

32.    "Geographic Area" is defined as:

> (a) specific customer facility or facilities in which the
> EMPLOYEE has acted on behalf of, or for the benefit of,
> ENVIROVAC and/or (b) the county or counties in which
> the EMPLOYEE has performed services on behalf of, or
> for the benefit of, ENVIROVAC or any customer of
> ENVIROVAC during the one (1) year immediately
> preceding the Separation Date.

*Id.* § 2A.i.

33.    "Business of ENVIROVAC" is defined as:

> [T]he provision of environmental and industrial
> maintenance services, which includes routine
> maintenance, utilizing high pressure washing equipment

> and vacuum trucks, plant outage and site remediations, water blasting, water cutting, power washing, jetting, bioblasting, pumping, hiflow, industrial vacuuming, OSHA confined space entry and rescue, tank cleaning, video inspecting, and boiler cleaning services.

*Id.* § 2A.i.

34.    "Duties" is defined as "any and all activities and services performed by EMPLOYEE for or on behalf of ENVIROVAC in the two (2) years immediately preceding the Separation Date." *Id.* § 2D.

35.    The Adkins Agreement also contains a customer non-solicitation provision, requiring that Adkins, for a period of two years following his separation from EnviroVac:

> Not solicit, or attempt to solicit, directly or by assisting others, any business from any of ENVIROVAC's customers or potential customers with whom EMPLOYEE had Material Contact during his or her employment with ENVIROVAC, for purposes of providing products or services that are competitive with or substantially similar to the Business of ENVIROVAC.

*Id.* § 2B.

36.    "Material Contact" is defined as:

> [C]ontact between EMPLOYEE and each customer or potential customer of ENVIROVAC: (a) With whom or which EMPLOYEE dealt on behalf of ENVIROVAC; (b) Whose dealings with ENVIROVAC were coordinated or supervised by EMPLOYEE; (c) About whom EMPLOYEE obtained Confidential Information or Trade Secrets as a result of EMPLOYEE's employment with ENVIROVAC; or (d) Who receives products or services

11

> authorized by ENVIROVAC, the sale or provision of which results or resulted in compensation, commissions, or earnings for EMPLOYEE within the two year period prior to the Separation Date.

*Id.* § 2A.ii.

37.  The Adkins Agreement also contains an employee non-solicitation covenant, requiring that Adkins, for a period of two years following his separation from EnviroVac, "not directly or indirectly recruit or solicit to hire any employee, contractor, or agent of ENVIROVAC or directly or indirectly cause any such employee, contractor, or agent of ENVIROVAC to terminate their employment, contractor, or agency relationship with ENVIROVAC." *Id.* § 2C.

38.  The Adkins Agreement also contains a confidentiality provision requiring that Adkins "not use, publish, disclose, reproduce, copy, distribute or disseminate any Confidential Information or Trade Secrets without the prior written consent of ENVIROVAC, except in direct connection with the performance of EMPLOYEE's employment with ENVIROVAC and only for the benefit of ENVIROVAC or its customers." *Id.* § 1.

39.  "Confidential Information" is defined as:

> [D]ata and information that: (i) Relates to the business of ENVIROVAC; (ii) That is not a Trade Secret as defined below; (ii) That is disclosed to EMPLOYEE or of which EMPLOYEE becomes aware of as a consequence of the EMPLOYEE's relationship with ENVIROVAC; (iii) That

has value to ENVIROVAC; (iv) That is not generally known to competitors of ENVIROVAC; and (v) Which includes methods of operation; names, contact information, personal, private, intimate, or sensitive information about customers or potential customers of ENVIROVAC; price lists; financial information and projections; personnel data; marketing information; information related to ENVIROVAC's vendors and other entities with which ENVIROVAC conducts business that provides a competitive advantage to ENVIROVAC; or similar information.

*Id.* § 1.A.

40.    "Trade Secrets" is defined as:

[I]nformation including, but not limited to, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, or code that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 1.C.

41.    The Adkins Agreement further obligates Adkins to return to EnviroVac its information and property upon his separation from EnviroVac, including "the originals and all copies of all Confidential Information and Trade Secrets and any physical or electronic embodiments thereof, then in EMPLOYEE's custody, control or possession . . ." *Id.* § 1.E.

13

42.    In Section 4 of the Adkins Agreement, Adkins acknowledged that the restrictive covenants are necessary to protect EnviroVac's legitimate business interests, that EnviroVac would suffer irreparable injury if Adkins breached the Adkins Agreement, and that EnviroVac would be entitled to injunctive relief in the event of such a breach, as well as money damages and an award of attorney's fees.

43.    EnviroVac has legitimate business interests supporting the noncompete, customer and employee non-solicitation, confidentiality, and return of property provisions in the Adkins Agreement, including the protection of its trade secrets, the protection of its valuable confidential information that otherwise does not qualify as a trade secret, the preservation of substantial relationships with specific prospective and existing customers, and customer goodwill associated with EnviroVac's ongoing business.

### MOSER IS HIRED BY ENVIROVAC

44.    In August 2017, EnviroVac hired Moser as an Account Manager in its Ultra High Volume Division.

45.    In December 2021, Moser was transferred to the Account Manager of Sylvamo (an EnviroVac customer) in Eastover, South Carolina.

46.    As an Account Manager, Moser had overall responsibility for optimizing productivity and sales at his assigned client account site.

47.   Moser was also responsible for ensuring customer satisfaction, continuous improvement of operations at the client location, and compliance with company and government regulations.

48.   On February 27, 2021, Moser and EnviroVac executed a Confidentiality and Restrictive Covenant Agreement (the "Moser Agreement"). A true and accurate copy of the Moser Agreement is attached as **Exhibit 2**.

49.   The Moser Agreement contains substantially similar restrictive covenants and definitions of terms contained in the restrictive covenants as those in the Adkins Agreement as described above, including a noncompete [Moser Agreement § 2D], customer non-solicitation covenant [*id.* at § 2B.], employee non-solicitation covenant [*id.* at § 2C.], confidentiality provision [*id.* at § 1], and return of property provision [*id.* at § 1E.].

50.   Likewise, in Section 4 of the Moser Agreement, Moser acknowledged that the restrictive covenants are necessary to protect EnviroVac's legitimate business interests, that EnviroVac would suffer irreparable injury if Moser breached the Moser Agreement, and that EnviroVac would be entitled to injunctive relief in the event of such a breach, as well as money damages and an award of attorney's fees.

51.   EnviroVac has legitimate business interests supporting the noncompete, customer and employee non-solicitation, confidentiality, and return of

property provisions in the Moser Agreement, including the protection of its trade secrets, the protection of its valuable confidential information that otherwise does not qualify as a trade secret, the preservation of substantial relationships with specific prospective and existing customers, and customer goodwill associated with EnviroVac's ongoing business.

### JORDAN IS HIRED BY ENVIROVAC

52.  In January 2019, EnviroVac hired Jordan as a Regional Vice President for the Alabama region.

53.  As Regional Vice President, Jordan was generally responsible for providing leadership and operational guidance to the front-line management team, providing communication and information to the delivery of EnviroVac's full suite of industrial cleaning services, meeting or exceeding the company's established business objectives, and being a "boots on the ground" leader and team builder.

54.  His duties included responsibility over EnviroVac's Ultra High Volume Division in Alabama, Arkansas, and West Georgia.

55.  Jordan managed 118 employees who provided services in Alabama, Arkansas, and West Georgia.

56.  As part of Jordan's duties at EnviroVac, he worked directly with EnviroVac customers throughout Alabama, Arkansas, and West Georgia to establish and

maintain key relationships with contacts at various levels inside each customer and to improve existing and generate new business opportunities.

57. On January 18, 2019, Jordan and EnviroVac executed a Confidentiality and Restrictive Covenant Agreement (the "Jordan Agreement"). A true and accurate copy of the Jordan Agreement is attached as **Exhibit 3**.

58. The Jordan Agreement contains substantially similar restrictive covenants and definitions of terms contained in the restrictive covenants as those in the Jordan Agreement as described above, including a noncompete [Jordan Agreement § 2D], customer non-solicitation covenant [*id.* at § 2B.], employee non-solicitation covenant [*id.* at § 2C.], confidentiality provision [*id.* at § 1], and return of property provision [*id.* at § 1E.].

59. Likewise, in Section 4 of the Jordan Agreement, Jordan acknowledged that the restrictive covenants are necessary to protect EnviroVac's legitimate business interests, that EnviroVac would suffer irreparable injury if Jordan breached the Jordan Agreement, and that EnviroVac would be entitled to injunctive relief in the event of such a breach, as well as money damages and an award of attorney's fees.

60. EnviroVac has legitimate business interests supporting the noncompete, customer and employee nonsolicitation, confidentiality, and return of property provisions in the Jordan Agreement, including the protection of its trade

secrets, the protection of its valuable confidential information that otherwise does not qualify as a trade secret, the preservation of substantial relationships with specific prospective and existing customers, and customer goodwill associated with EnviroVac's ongoing business.

### JACKSON IS HIRED BY ENVIROVAC

61.  In July 2019, EnviroVac hired Jackson as a Division Manager.

62.  In April 2020, Jackson was promoted to Regional Vice President.

63.  As Regional Vice President, Jackson was generally responsible for providing leadership and operational guidance to the front-line management team, providing communication and information to the delivery of EnviroVac's full suite of industrial cleaning services, meeting or exceeding the company's established business objectives, and being a "boots on the ground" leader and team builder.

64.  Jackson managed 107 employees who provided services in South Carolina and North Carolina for General Services, and North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Arkansas, and beyond for Ultra High Volume jobs.

65.  As part of Jackson's duties at EnviroVac, he worked directly with EnviroVac customers, employees, and vendors throughout South Carolina and North Carolina for General Services, and North Carolina, South Carolina, Georgia,

Florida, Alabama, Mississippi, Louisiana, Arkansas, and beyond for Ultra High Volume jobs.

66. On July 17, 2019, Jackson and EnviroVac executed a Non-Disclosure Agreement (the "Jackson Agreement"). A true and accurate copy of the Jackson Agreement is attached as **Exhibit 4**.

67. The Jackson Agreement contains a confidentiality provision, definitions of terms contained in the confidentiality provision, and a return of property provision that are substantially similar to the confidentiality provision and definitions in the Jackson Agreement as described above. Jordan Agreement § 1.

68. In Section 3 of the Jackson Agreement, Jackson acknowledged that the confidentiality provision is necessary to protect EnviroVac's legitimate business interests, that EnviroVac would suffer irreparable injury if Jackson breached the Jackson Agreement, and that EnviroVac would be entitled to injunctive relief in the event of such a breach, as well as money damages and an award of attorney's fees.

69. EnviroVac has legitimate business interests supporting the confidentiality and return of property provisions in the Jackson Agreement, including the protection of its trade secrets, and the protection of its valuable confidential information that otherwise does not qualify as a trade secret.

## LLOYD IS HIRED BY ENVIROVAC

70.    In December 2020, EnviroVac hired Lloyd as an Operations Supervisor.

71.    In November 2023, he was promoted to Account Manager in EnviroVac's Ultra High Volume Division.

72.    As an Account Manager, Lloyd was responsible for the overall responsibility of optimizing productivity and sales at their assigned client account site. Account Managers also ensure customer satisfaction, continuous operational improvement at their client location, and compliance with company and government regulations.

73.    As part of Lloyd's duties at EnviroVac, he worked directly with EnviroVac customers throughout South Carolina.

74.    On December 3, 2020, Lloyd and EnviroVac executed a New-Hire Confidentiality and Restrictive Covenant Agreement (the "Lloyd Agreement"). A true and accurate copy of the Jordan Agreement is attached as **Exhibit 5**.

75.    The Lloyd Agreement contains substantially similar restrictive covenants and definitions of terms contained in the restrictive covenants as those in the Adkins Agreement as described above, including a noncompete [Lloyd Agreement § 2D], customer non-solicitation covenant [*id.* at § 2B.], employee

non-solicitation covenant [*id.* at § 2C.], confidentiality provision [*id.* at § 1], and return of property provision [*id.* at § 1E.].

76. Likewise, in Section 4 of the Lloyd Agreement, Lloyd acknowledged that the restrictive covenants are necessary to protect EnviroVac's legitimate business interests, that EnviroVac would suffer irreparable injury if Lloyd breached the Lloyd Agreement, and that EnviroVac would be entitled to injunctive relief in the event of such a breach, as well as money damages and an award of attorney's fees.

77. EnviroVac has legitimate business interests supporting the noncompete, customer and employee nonsolicitation, confidentiality, and return of property provisions in the Lloyd Agreement, including the protection of its trade secrets, the protection of its valuable confidential information that otherwise does not qualify as a trade secret, the preservation of substantial relationships with specific prospective and existing customers, and customer goodwill associated with EnviroVac's ongoing business.

## ENIVIROVAC'S EMPLOYEE HANDBOOK

78.  While employed at EnviroVac, each of the Former Employees received and were required to read and acknowledge EnviroVac's Employee Handbook.

79. Among the provisions within the Handbook are EnviroVac's expectations concerning confidentiality.

80.    The Handbook provides in pertinent part:

>    No one is permitted to remove from the Company's property, or make copies of, any Company records, reports, files, plans, drawings, or other documents, whether in hard copy or in electronic form, without express prior written approval from the Company.

Excerpt attached as **Exhibit 6**.

### FORMER EMPLOYEES RESIGN AND JOIN A COMPETITOR

81.    The Former Employees submitted their resignations to EnviroVac between November 17, 2025, and January 6, 2026.

82.    At the time they voluntarily resigned from EnviroVac, none of the Former Employees would reveal the identity of their new employer despite EnviroVac's requests.

83.    It was only later that EnviroVac discovered that the Former Employees had all joined EnviroSmart, a direct competitor of EnviroVac.

84.    Upon information and belief, each of the Former Employees joined EnviroSmart as part of EnviroSmart's efforts to start its own Ultra High Volume Division, which it previously did not have.

85.    Contrary to the terms of their various Agreements, the Former Employees immediately joined EnviroSmart and assumed roles substantially similar to their positions at EnviroVac, performing the same or substantially similar

duties they performed for EnviroVac for EnviroSmart, and working in the same territories as they had with EnviroVac in violation of their noncompetes.

86. EnviroVac entered into the restrictive covenants with the Former Employees to protect its legitimate business interests in its trade secrets and other valuable confidential information, its substantial relationships with prospective and existing customers, and its customer goodwill.

87. EnviroVac has a substantial interest in protecting and safeguarding the Former Employees' knowledge of various confidential information regarding EnviroVac's business and customers that the Former Employees were privy to and, in some cases, instrumental in creating and developing.

88. EnviroVac also has a substantial interest in protecting the existing and prospective customer relationships and goodwill that the Former Employees developed and maintained during their employment with EnviroVac.

89. The Former Employees' breach of their covenants has irreparably harmed EnviroVac and EnviroVac will continue to be irreparably harmed if its confidential information, prospective and existing customer relationships, and customer goodwill are not protected.

90. EnviroVac lacks an adequate remedy at law for the Former Employees' breach of their covenants to EnviroVac.

91. Moreover, the Former Employees will not suffer any undue burden from the

enforcement of the Agreements. Compliance with the covenants does not preclude the Former Employees from working altogether.

92.   Accordingly, the only sufficient protection is an injunction against the Former Employees' continuing and future breaches that requires the Former Employees to comply with their covenants with EnviroVac.

## ENVIROVAC DISCOVERS THAT THE FORMER EMPLOYEES MISAPPROPRIATED ITS CONFIDENTIAL AND PROPRIETARY INFORMATION

93.   Upon learning that the Former Employees had joined EnviroSmart, EnviroVac started investigating the Former Employees' electronic activity during their employment at EnviroVac.

94.   During the investigation, and notwithstanding the provisions of their respective written Agreements with EnviroVac and the clear policy set out in the Employee Handbook, EnviroVac discovered that at least some of the Former Employees misappropriated EnviroVac's confidential and proprietary information.

95.   For example, Jackson inserted a USB device into his laptop on August 22, 2025, at 04:23:39 PM, showing a last removed date/time of August 26, 2025, at 03:45:27 PM. He inserted a different USB device on August 22, 2025, between 04:42:55 PM and 05:15:28 PM.

96.   While a USB device was connected, on August 26, 2025, between 03:45:51 PM and 03:58:06 PM, he accessed:

D:\UHVRequestListandCurrentStatus.xlsx

D:\UHV Pump Tools.pdf

D:\UHV Inventory.xlsx

D:\UHV Inventory (TUG).xlsx

D:\SO7897-FNC_7836-IN_110421R2_UNIT2OF2.pdf

D:\Inventory.xlsx

D:\Inventory 2.xlsx

D:\IDMS CAT big pump.pdf

D:\-External-FW_ GD Energy Products.pdf

D:\CAT.pdf

D:\Boiler Scope & Details.docx

D:\Boiler Scope & Details Sales.docx

D:\BIG PUMP EQUIPMENT REQUIREMENTS.xlsx

D:\BIG PUMP EQUIP. LIST (1).xlsx

97.     Further, while a USB device was connected on August 22, 2025, between 04:31:19 PM and 04:38:06, Jackson accessed:

D:\-External-FW GD Energy Products.msg

D:\2025 Premium Rate Calculator.xlsx

D:\2025 Premium Rates.xls

D:\2025 Standard Rates.xls

D:\2025 Standard Rate Calculator.xlsx

D:\UHV Standard Calculator.xlsx

98. These files contain EnviroVac's proprietary, highly confidential, and trade secret information, including highly sensitive financial information, customer and product information, and internal tools.

99. This activity strongly indicates that Jackson copied these files to USB drives.

100. There is no legitimate business reason for Jackson to copy any of this information onto USB drives.

101.  On February 9, 2026, EnviroVac's counsel wrote to Jackson to demand that he immediately return to EnviroVac all company data, delete that information from his files, and confirm that he had done so. A copy of that letter is attached as **Exhibit 7.**

102. Jackson never responded to this demand.

103. For his part, in late November and early December 2025, Jordan emailed several files to his personal email address (bimijo1971@gmail.com) from his EnviroVac email address, including the following data:

    a. The contact information for a new EnviroVac client, and the associated new vendor form.

    b. Spreadsheets detailing EnviroVac's Accrued Liabilities, Accounts Receivable, and 2026 budget projects and financial performance data

    c. Spreadsheets reflecting EnviroVac's Accrued Liabilities and Accounts Receivable at the client level, along with performance metrics for 2025.

    d.    EnviroVac company-wide financial performance data from January through August, 2025, including all areas, all revenue, all costs along with a full profit and loss statement.

    e.    EnviroVac pricing information and a calculation formula for an EnviroVac customer.

104.    These files contain EnviroVac's proprietary, highly confidential, and trade secret information, including highly sensitive financial information and customer and product information.

105.    There is no legitimate business reason for Jordan to have emailed this information to his personal email address.

106.    On January 7, 2026, EnviroVac's counsel wrote to Jordan to demand that he immediately return to EnviroVac, all company data, to delete that information from his files, and to confirm that he had done so. A copy of that letter is attached as **Exhibit 8.**

107.    Jordan never responded to this demand.

108.    The Former Employees had no valid business reason or need to be copying this information over to a personal USB or forwarding it to a personal email address.

109.    Although EnviroVac continues to investigate the Former Employees' misconduct, EnviroVac remains rightfully concerned that it has not been able to determine the full scope of the Former Employees' conduct or recover its proprietary and confidential information due to their lack of cooperation.

110. The Former Employees' restrictive covenants with EnviroVac were specifically designed to protect EnviroVac's legitimate business interests in its trade secrets and other valuable confidential information.

111. Jordan and Jackson acquired EnviroVac's trade secrets and confidential information during their employment, under circumstances that imposed a clear duty to maintain their secrecy. The Former Employees were repeatedly reminded of these obligations through annual training, compliance questionnaires, and direct supervision responsibilities.

112. The information Jordan and Jackson obtained from EnviroVac has independent economic value because it is not generally known or readily ascertainable to competitors such as EnviroSmart.

113. EnviroVac makes extraordinary efforts to maintain and ensure that its confidential information and trade secrets are not improperly disclosed. These include requiring employees who have access to confidential information and trade secrets to sign non-disclosure agreements, restricting access to its confidential information and trade secrets on a need-to-know basis, protecting EnviroVac's computer systems and electronically-stored data with hardware and electronic security devices and applications, including firewalls, encrypting its data containing confidential and trade secret information, and restricting physical access to its offices using key fobs.

114. Despite these protections and their Agreements with EnviroVac, Jordan and Jackson breached their obligations and, on information and belief, continue to do so.

115. EnviroVac has a substantial and ongoing interest in protecting and safeguarding the confidential information and trade secrets Jordan and Jackson acquired, as their unauthorized use or disclosure could cause significant harm to EnviroVac's business and customer relationships.

116. Jordan and Jackson's breaches of their nondisclosure obligations have caused, and will continue to cause, irreparable harm to EnviroVac if its confidential information and trade secrets are not protected.

117. EnviroVac lacks an adequate remedy at law for Jordan and Jackson's breaches, as monetary damages alone cannot fully address the ongoing risk to EnviroVac's proprietary information.

### THE FORMER EMPLOYEES REFUSE TO COMPLY WITH THEIR AGREEMENTS

118. EnviroVac, through counsel, also made demand on Moser and Adkins to comply with their confidentiality, noncompete, non-recruitment and non-solicitation obligations and to confirm that they would do so in writing.

119. EnviroVac's December 5, 2025, letter to Moser is attached as **Exhibit 9.**

120. Moser did not respond to this letter.

121. EnviroVac's January 7, 2026, letter to Adkins is attached as **Exhibit 10**.

122.  Adkins did not respond to this letter.

## ENVIROSMART

123.  When EnviroVac learned that the Moser, Jackson, and other former employees of EnviroVac had joined EnviroSmart, EnviroVac immediately wrote to EnviroSmart's Chief Executive Officer, and registered agent, Michelle Lynch, alerting EnviroSmart of the existence of the Agreements and demanding that EnviroSmart do nothing to facilitate former EnviroVac employees violations of those Agreements. The December 5, 2025, letter from EnviroVac's counsel to EnviroSmart is attached as **Exhibit 11**.

124.  When additional employees, including Jordan and Adkins left EnviroVac and joined EnviroSmart, EnviroVac's counsel followed up with a January 14, 2026 letter demanding EnviroSmart's cooperation in ensuring that it did not possess and was not using any of EnviroVac's confidential data, in addition to demanding that EnviroSmart not facilitate any breach by any of the Former Employees of their Agreements with EnviroVac. A copy of that January 14, 2026, letter is attached as **Exhibit 12**.

125.  Counsel for EnviroVac followed up repeatedly with counsel for EnviroSmart to demand that EnviroSmart provide copies of the EnviroSmart job descriptions for all the EnviroVac Former Employees as well as to confirm that EnviroSmart does not have and is not using any EnviroVac data. Copies

of this email correspondence in January and February 2026 are attached cumulatively as **Exhibit 13**.

126.  EnviroSmart has yet to substantively comply with these very reasonable demands.

127.  All conditions precedent to this action have been performed, waived, or otherwise satisfied.

<u>COUNT I – BREACH OF CONTRACT</u>

128.  EnviroVac incorporates by reference the allegations in paragraphs 1 through 127 above as if fully set forth herein.

129.  The Agreements are valid and enforceable contracts between the Former Employees and EnviroVac.

130.  The Former Employees have violated and remain in violation of the restrictive covenants in their Agreements by virtue of their breach of their respective noncompetes, customer and employee non-solicitation covenants, confidentiality provisions, and return of property provisions under the Agreements.

131.  The Former Employees are engaging in competitive activities within the territories identified in their Agreements by performing the same or substantially similar duties as they performed for EnviroVac for EnviroSmart, a direct competitor.

132.    Upon information and belief, the Former Employees are soliciting EnviroVac customers and potential customers with whom they had material contact within the last year of their EnviroVac employment for the purpose of providing products or services that are competitive with or substantially similar to EnviroVac's business.

133.    Upon information and belief, the Former Employees are recruiting and soliciting EnviroVac employees to leave EnviroVac and work at EnviroSmart.

134.    Upon information and belief, the Former Employees are divulging and using EnviroVac's trade secrets and/or other valuable confidential information on behalf of EnviroSmart.

135.    The Former Employees' ongoing breaches of the Agreements in this manner are causing and will continue to cause irreparable harm to EnviroVac, including by harming EnviroVac's goodwill with customers and depriving EnviroVac of the competitive advantages derived from its trade secrets and/or other valuable confidential information.

136.    EnviroVac lacks an adequate remedy at law for such irreparable harm.

137.    EnviroVac is entitled to temporary, preliminary, and permanent injunctive relief to enjoin further breaches by the Former Employees.

138.    The Former Employees' breaches of the Agreements have also directly and proximately caused damage to EnviroVac. EnviroVac is also entitled to an

award of all damages already caused by the Former Employees' breaches of the Agreements in an amount to be determined and proven at the time of trial.

139.  The Former Employees have acted in bad faith, have been stubbornly litigious, and have caused EnviroVac unnecessary trouble and expense. EnviroVac is therefore entitled to an award of attorney's fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-1.

140.  EnviroVac is also entitled to an award of attorney's fees and litigation expenses pursuant to the prevailing party fee provisions in the Agreements.

### COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT

141.  EnviroVac incorporates by reference the allegations in paragraphs 1 through 127 above as if fully set forth herein.

142.   Under the Agreements, the Former Employees agreed, among other things, not to compete with EnviroVac during and after their relationships with EnviroVac, not to solicit certain EnviroVac customers, and/or not to use or disclose EnviroVac's confidential or trade secret information.

143.  EnviroSmart was and is aware that the Former Employees are subject to the Agreements.

144.  EnviroSmart, through various acts, has intentionally interfered with the Agreements.

145.  EnviroSmart's actions are improper and without privilege.

146.    EnviroSmart acted purposefully, maliciously, and with intent to injure EnviroVac.

147.    As a result of EnviroSmart's conduct, the Former Employees did in fact breach their Agreements and other legal obligations to EnviroVac.

148.    EnviroVac is entitled to an award of all damages caused by EnviroSmart's interference, the exact amount of which will be demonstrated and proven at the time of trial.

149.    EnviroSmart's conduct exhibits willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that raises the presumption of conscious indifference to consequences, such that EnviroVac is entitled to punitive damages in an amount to be determined at trial.

150.    EnviroSmart has acted in bad faith, has been stubbornly litigious and has caused EnviroVac unnecessary trouble and expense such that EnviroVac is entitled to its litigation expenses pursuant to O.C.G.A. section 13-6-11.

## COUNT III – DEFEND TRADE SECRETS ACT

151.    EnviroVac incorporates by reference the allegations in paragraphs 1 through 127 above as if fully set forth herein.

152.    The Defend Trade Secrets Act (the "DTSA") of 2016, Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016 and amends chapter 90 of Title 18 of the U.S. Code, forbids threatened and actual

misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1) (as amended).

153. Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. § 1839(3) (as amended).

154. Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who—(i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of

disclosure or use, knew or had reason to know that the knowledge of the trade secret was—(I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that—(I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake[.]" 18 U.S.C. § 1839(5) (as amended).

155. EnviroVac has invested considerable time, effort, and expense in developing its confidential information and trade secrets.

156. EnviroVac derives economic value from the fact that its trade secrets are not generally known to individuals or entities outside of EnviroVac.

157. EnviroVac makes reasonable efforts to ensure the confidentiality and protection of its confidential information and trade secrets. Such measures include but are not limited to the following:

- Requiring employees who have access to confidential information and trade secrets to sign non-disclosure agreements;

- Restricting access to its confidential information and trade secrets on a need-to-know basis;

- Protecting EnviroVac's computer systems and electronically stored data with hardware and electronic security devices and applications, including firewalls;

- Encrypting its data containing confidential and trade secret information; and

- Restricting physical access to its offices using key fobs.

158. The Defendants acquired EnviroVac's trade secrets under circumstances that gave rise to a duty to maintain their secrecy.

159. Defendants, and certainly the Former Employees, knew they had a duty to maintain the secrecy of EnviroVac's trade secrets.

160. The Former Employees misappropriated EnviroVac's trade secrets when they copied data to USB drives and in forwarding EnviroVac files from their EnviroVac email addresses to their personal email accounts and to those of others who are not employed by or associated with EnviroVac.

161. The information the Former Employees copied to the USB drives and forwarded to their personal email addresses and to those who are not affiliated with EnviroVac include trade secrets related to products or services used in, or intended for use in, interstate commerce.

162.   This information derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

163.   Defendants' actions constitute misappropriation under the DTSA.

164.   As a result of the Former Employees' willful and malicious misappropriation of EnviroVac's trade secrets, EnviroVac has suffered and continues to suffer damages in an amount to be proven at trial.

165.   Defendants' actions will continue to cause irreparable harm and damage to EnviroVac and its trade secret information if Defendants are not permanently restrained.

### COUNT IV – GEORGIA TRADE SECRETS ACT

166.   EnviroVac incorporates by reference the allegations in paragraphs 1 through 127 above as if fully set forth herein.

167.   The Georgia Trade Secrets Act, O.C.G.A. section 10-1-760, *et seq.* ("GTSA"), prohibits any person from misappropriating trade secrets by improper means, e.g., theft, bribery, or breach of contract or other duty, including inducement of such breach.

168.   The "[a]ctual or threatened misappropriation [of a trade secret] may be enjoined." O.C.G.A. § 10-1-762(a). In addition to or in lieu of injunctive

relief, a person is entitled to recover damages for trade secret misappropriation. O.C.G.A. § 10-1-763.

169. By virtue of their performance of their responsibilities for EnviroVac, the Former Employees were given access to trade secrets of EnviroVac.

170. On information and belief, by virtue of hiring the Former Employees, EnviroSmart secured access to trade secrets of EnviroVac.

171. Former Employees improperly took EnviroVac's trade secrets while employed by EnviroVac.

172. The Former Employees' misappropriation, retention, and actual and/or threatened use and disclosure of EnviroVac's trade secrets violates the GTSA.

173. The Former Employees misappropriated EnviroVac's trade secrets by improper means within the meaning of O.C.G.A. section 10-1-761.

174. EnviroVac has suffered and will continue to suffer actual damages caused by the Former Employees' misappropriation of its trade secrets in an amount to be proven at trial.

175. The Former Employees' misappropriation of EnviroVac's trade secrets was willful, wanton, reckless and malicious, entitling EnviroVac to an award of exemplary damages in an amount authorized by O.C.G.A. section 10-1-763(b).

176.   Pursuant to O.C.G.A. section 10-1-764, EnviroVac is entitled to an award of its attorney's fees and costs incurred in this action because the Former Employees have willfully and maliciously misappropriated the trade secrets of EnviroVac.

**PRAYER FOR RELIEF**

WHEREFORE, EnviroVac prays of this Honorable Court as follows:

A.   For preliminary and permanent injunctive relief restraining the Former Employees, and those persons in active concert or participation with them, from further violating the noncompete, customer and employee non-solicitation, and confidentiality provisions in the Agreements.

B.   For preliminary and permanent injunctive relief restraining Defendants from using in any manner, or otherwise disclosing to any third party, any and all information in their possession, custody, or control which Defendants received or took from EnviroVac;

C.   For an order requiring Defendants to return to EnviroVac all of its confidential, proprietary, and trade secret information, and any other property they have misappropriated;

D.   For a judgment against Defendants in an amount to be determined and proven at the time of trial;

E.     For an award of EnviroVac's costs, reasonable attorney's fees, and other expenses of litigation; and

F.     For such other and further relief as this Court deems just, proper, and equitable under the circumstances.

Dated: February 13, 2026.                    Respectfully Submitted,

                                        BERMAN FINK VAN HORN P.C.

                                        By:   */s/ Brett A. Switzer*
                                        Brett A. Switzer
                                        Georgia Bar No. 554141
                                        William J. Piercy
                                        *(pending admission, application*
                                        *to be forthcoming)*
                                        Georgia Bar No. 579627
                                        Daniel H. Park
                                        *(pending admission, application*
                                        *to be forthcoming)*
                                        Georgia Bar No. 930188
                                        3475 Piedmont Road, N.E., Suite 1640
                                        Atlanta, Georgia 30305
                                        (404) 261-7711
                                        bswitzer@bfvlaw.com
                                        bpiercy@bfvlaw.com
                                        dpark@bfvlaw.com

                                        *Counsel for Plaintiff*